UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:13-CR-20-GFVT-HAI-24 |
| ) | |
| v. ) | RECOMMENDED DISPOSITION |
| ) | |
| SUZANN JUDY PHILLIPS, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Suzann Judy Phillips. *See* D.E. 1239. District Judge Van Tatenhove imposed a judgment against Defendant on October 15, 2015, following her guilty plea to the lesser-included offense of conspiracy to manufacture a mixture or substance containing methamphetamine. D.E. 1002 at 1. Defendant was originally sentenced to twenty-eight months of imprisonment and a six-year term of supervised release. *Id.* at 2–3. Defendant was released from the custody of the Bureau of Prisons ("BOP") on November 23, 2016, to begin service of her term of supervision.

I.

On January 17, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report") charging Defendant with three violations. The USPO secured a warrant from Judge Tatenhove on the same day. *See* D.E. 1239; D.E. 1240.

The Report provides the following background regarding the violations. On November 9, 2018, a sweat patch ("SP #1") was applied to Defendant in order for the USPO to be able to monitor her use of controlled substances. Defendant removed the sweat patch the following day and told

the USPO that she "scratched it off" while she was sleeping. Defendant reported to the probation office as directed on November 13, with the sweat patch, which was forwarded to Pharmchem Inc. for testing. SP #1 tested positive for cocaine. During Defendant's office visit on November 13, another sweat patch ("SP #2") was applied to again allow the USPO to monitor her drug use. On November 19, this sweat patch was removed and forwarded to Pharmchem Inc. for testing. SP #2 tested positive for cocaine and methamphetamine/amphetamine.

Defendant reported to the probation office on November 30 to discuss the results of SP #1 and SP #2. At that time, she admitted to the use of both cocaine and methamphetamine. Based on Defendant's admission, and because it was her first discovered violation, the USPO provided Judge Van Tatenhove with a Report on Offender Under Supervision (12A) requesting that no action be taken by the Court. The 12A was approved on December 10. *See* D.E. 1228.

On November 30, another sweat patch ("SP #3") was applied to Defendant. SP #3 was removed on December 12. SP #3 tested positive for methamphetamine/amphetamine. On December 12, a fourth sweat patch ("SP #4") was applied to Defendant, and it was removed on December 27. SP #4 tested positive for methamphetamine/amphetamine and cocaine.

On December 27, a fifth sweat patch ("SP #5") was applied to Defendant during her visit to the probation office. SP #5 was removed on January 4, 2019, and tested positive for methamphetamine, oxycodone, and opiates. Finally, a sixth sweat patch ("SP #6") was applied to Defendant during her office visit on January 4. SP #6 was removed on January 14 and tested positive for methamphetamine.

During Defendant's visit to the probation office on January 14, Defendant was questioned about the results of SP #4. Initially, Defendant said that her son's fiancée might have "set [her] up," but following additional questioning, Defendant advised that she had snorted morphine that

might have contained cocaine. Further, regarding the sweat patches that tested positive for methamphetamine/amphetamine, officials from Pharmchem Inc. advised the USPO that those results could be the residual effects of the drugs in Defendant's system from her admitted use in November 2018. Thus, the Report does not seek to hold Defendant accountable for her continuing to test positive for methamphetamine/amphetamine in the sweat patch results because that use was addressed by the Court's approval of the 12A.

Based on the positive results of SP #4 for cocaine, and based on Defendant's admission to snorting morphine that might have contained cocaine, the Report alleges that Defendant violated the condition of her supervised release that states: "The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician." This conduct would constitute a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Citing this conduct, the Report next alleges that Defendant violated the condition of her supervised release that states: "The defendant shall not commit another federal, state, or local crime." Here, the Report notes that cocaine is a Schedule II Controlled Substance, and accordingly, "[d]ue to the defendant's prior conviction for a controlled substance offense, and with the Sixth Circuit Court of Appeals' ruling that use is the equivalent of possession, simple possession of cocaine constitutes conduct that would result in a violation of 21 U.S.C. § 844(a), a Class E Felony." This conduct would constitute a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2).

Additionally, the Report alleges that, on December 10, 2018, Defendant was arrested by an officer of the Corbin Police Department based on a Warrant of Arrest – Complaint Warrant. According to the complaint, Defendant stole $385 worth of merchandise from Belk in Corbin, Kentucky, on November 21, 2018. During Defendant's visit to the probation office on December

3

12, Defendant told United States Probation Officer Scott Greiwe about the arrest, but denied having stolen any merchandise from Belk. Defendant later admitted the theft to Officer Greiwe.

On January 8, 2019, Defendant pled guilty to Theft by Unlawful Taking – Shoplifting Under $500, in violation of KRS § 514.030, a Class A Misdemeanor under Kentucky law, in Knox (County) District Court. Defendant was sentenced to 360 days of jail, conditionally discharged for twenty-four months, a fine and court costs, and $385 in restitution to Belk. Defendant is also to have no contact with Belk in Corbin. Based on this incident, the Report alleges that Defendant violated the condition of her supervised release that states: "The defendant shall not commit another federal, state, or local crime." This conduct would constitute a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on February 1, 2019. D.E. 1246. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

Defendant's final supervised release violation hearing was originally scheduled to occur on February 15, 2019. *Id.* However, on that day, defense counsel requested a continuance to secure a witness to present mitigating evidence for Defendant. *See* D.E. 1248. Ultimately, Defendant's final hearing was held on March 4, 2019. D.E. 1255.

At the final hearing, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. *Id.* Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the

4

stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that she engaged in conduct that is, at worst, a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, defense counsel called Beverly Richards, a psychotherapist for Baptist Health in Corbin, to testify. D.E. 1254. Ms. Richards is a licensed clinical social worker, and she has seen Defendant for mental-health issues since 2007 or 2008. Ms. Richards described the course of Defendant's treatment and how Defendant suffers from: bipolar II disorder; post-traumatic stress disorder ("PTSD"); addiction, including opioid dependence; and depression. Regarding Defendant's bipolar diagnosis, Ms. Richards said the disorder can lead to mood swings. Ms. Richards further said that Defendant's PTSD, and the circumstances that traumatized her in the past, are an issue Defendant will never outrun. Ultimately, Ms. Richards opined that medication and therapy, and specifically six months of inpatient substance-abuse treatment, are the tools Defendant needs to regain stability in her life.

Defense counsel also briefly called Officer Greiwe to testify. *Id.* Officer Greiwe said that Defendant had been referred to comp care for treatment, but she was unable to be seen until January 2019. Officer Greiwe informed the Court that inpatient treatment options like Ms. Richards described are available for Defendant through the probation office.

5

Concerning a recommended sentence, the government argued that Defendant's term of supervision should be revoked and that she should be sentenced to a term of six months of imprisonment, followed by two years of supervised release. The government further argued that, as a special condition of her term of supervision, Defendant should be required to participate in a six-month term at an inpatient drug-treatment facility. Defense counsel, on the other hand, requested that, because Defendant's term of supervision must be revoked by statute, she be incarcerated only as long as it takes to get her placed in an inpatient treatment center. Here, defense counsel, like the government, requested that Defendant be placed back on supervision for two years and that she be required to serve the first six months of that term in an inpatient treatment facility.

Defendant chose to personally address the Court, and she requested the opportunity to show that she can succeed. She also recognized that, should the Court show her leniency upon this revocation, she could face the statutory maximum for future violations.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 for conspiracy to manufacture a mixture or substance containing methamphetamine is a Class C felony. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a). For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F.

App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted).  The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."  U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to the theft and drug use violations and as a Grade B violation with respect to the drug possession violation.  Given Defendant's criminal history category of III (the category at the time of her conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months.  *See* U.S.S.G. § 7B1.4(a).  Both parties agreed to this calculation of the range.

Further, Congress does ***mandate*** revocation in a case of this nature.  By statute, the Court must revoke Defendant's release because she possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).  The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1).  *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection.").  The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief.  *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at

7

835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

IV.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, counsel for both parties addressed the statutory factors at Defendant's final hearing. Through its consideration, the Court will recommend that Defendant's supervision be revoked and that she be sentenced to three months of imprisonment followed by two years of supervised release with the added condition that Defendant spend the first six months of her supervision in an inpatient substance-abuse treatment facility immediately following her release from BOP custody.

First, concerning the nature and circumstances of the underlying offense, Defendant was involved in a conspiracy to manufacture a mixture or substance containing methamphetamine. Her admission to having used morphine that may have contained cocaine is troubling to the Court. Given Defendant's history of drug abuse and criminal conduct, the Court is concerned about Defendant's actions because they demonstrate that she continues to associate with individuals who either deal or use drugs.

The Court next considers Defendant's history and characteristics. Here, the Court recognizes that the burden of Defendant's past is not fair and is very heavy. Specifically, the Court observes the wrongs that Defendant has suffered due to various forms of abuse and that she continues to deal with PTSD from those events. Defendant's history of mental-health issues, as

described by Ms. Richards, is certainly mitigating. Additionally, Defendant's criminal history has been well-documented for the Court, including her past theft convictions. Defendant also described to the Court medical issues she has experienced with her gums and how a prescription for pain medication for those issues led her to abuse drugs in this instance.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence. As the government explained, these needs are not totally in conflict with another factor the Court must consider, which is the need to provide Defendant with any necessary education, training, or treatment. Instead, the Court views its recommended sentence as advancing all of these factors because it would require, following revocation and a term of three months of imprisonment, Defendant to participate in six months of inpatient substance-abuse treatment as a condition of her supervision. This recommendation helps ensure that Defendant receives the counseling and tools she needs, while also demonstrating that the Court takes reported criminal conduct by individuals on supervised release seriously.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range, which the Court must also consider. Yet, the Court believes a sentence outside of the advisory Guidelines range is appropriate in Defendant's case. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation). Defendant's present advisory range is eight to fourteen months. Her significant history of unfortunate physical and emotional abuse, and resulting mental-health issues,

mitigate significantly. She was clearly distraught during the final hearing, and the Court is sympathetic to her fragile state. However, the defense's suggestion, which effectively means time-served, does not adequately recognize the scope and seriousness of the violations. A five-month deviation adequately addresses the mitigating factors. The additional condition that Defendant participate in six months of inpatient treatment as part of her supervision will hopefully serve to protect the public.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Here, Defendant's behavior and actions represent a breach of the Court's trust because she used drugs and committed additional criminal conduct while on supervision. Defendant recognizes the wrongfulness of her violations, but a three-month term of imprisonment fairly addresses the § 3553(a) factors.

In fashioning its recommended sentence, the Court must consider whether an additional term of supervised release is warranted. Upon this record, the Court finds that an additional term of supervision is warranted for Defendant. Although there is no maximum amount of supervision the Court could impose, see 18 U.S.C. § 3583(e)(3), (h) and 21 U.S.C. § 841(b)(1)(C), the Court will recommend that two years of supervised release be imposed upon Defendant following her release from custody. And, as discussed above, the Court will recommend that Defendant participate in six months of inpatient substance-abuse treatment as a condition of her supervision.

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the violations;

(2) Revocation and imprisonment for a term of three months; and

(3) Two years of supervised release under the conditions contained in Defendant's original judgment (D.E. 1002), with the added condition that she be required to participate in six months of inpatient substance-abuse treatment immediately upon her release from BOP custody.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 1255. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 13th day of March, 2019.



Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**